UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Travis King, | No. 2:20-cv-01326-KJM-DB |
| Plaintiff, | ORDER |
| v. | |
| City of Sacramento, et al., | |
| Defendants. | |

Plaintiff Travis King was arrested and jailed for a crime he did not commit. Mr. King filed this case against the City of Sacramento, Officer Jonathan Houston, Officer Anthony Boler, Costco Wholesale Corporation, and its employee Eric Klockenbrink alleging constitutional and state law violations. The City of Sacramento, Officer Houston and Officer Boler now move for summary judgment. After consideration of the parties' briefs and oral arguments, and for the reasons stated below, the motion is **granted in part and denied in part**. A jury could conclude the officers recklessly omitted material information from their warrant application and that their actions violated California law.

**I.     BACKGROUND**

The following facts are either undisputed or construed in the light most favorable to Mr. King as required. On May 7, 2019, two men robbed a local Costco Wholesale Corporation

store. *See* Boler Decl. ¶ 4, ECF No. 19-5; Boler Observations Report ("Boler Report") at 5,[1] Boler Decl. Ex. A, ECF No. 19-5. According to Costco employees, two "black male adults" in their twenties or thirties stole $2,400 worth of merchandise from the store. *See* Boler Decl. ¶ 5. Costco employees chased the men and saw them depart in a silver Cadillac CTS. *Id.* ¶ 6. One employee recorded parts of the incident on his cell phone; surveillance video captured other moments. *See* Boler Report at 5.

Later that day, the Sacramento Police Department dispatched officers to Costco, where they reviewed the surveillance video. *See* Boler Decl. ¶¶ 4, 6–7. Officer Boler reviewed the video and then described what he saw:

> [T]he first suspect (later possibly identified as . . . Keyauntay Head) was approximately 5'10["] with a medium build and was wearing a white T-shirt . . . . The other suspect (later possibly identified as . . . [plaintiff] Travis King) was approximately 6'[] with a medium build and was wearing a yellow hoodie . . . . He had short black hair and appeared to be developing a bald spot on the top of his head.

Boler Report at 5. The surveillance video also showed the rear license plate of the Cadillac CTS. *See* Boler Decl. ¶ 6.

Police department staff searched the license plate and found that the car's registration had expired fourteen months earlier. *See* Boler Report at 6. At that time, the vehicle was registered to a Michael L. Brown on 23rd Avenue. *See* Cadillac CLETS[2] Response, Patterson Decl. Ex. I, ECF No. 21-3. The 23rd Avenue address is an eight-unit apartment building. *See* King Decl. ¶ 13, Opp'n, ECF No. 21-4. A further records search revealed that Mr. King lived in the building. *See* King CLETS Response, Patterson Decl. Ex. J, ECF No. 21-3; Boler Report at 6.

Officer Boler determined Mr. King "appeared to be the suspect wearing the yellow hoodie" based on the surveillance video and Mr. King's booking photograph. Boler Report at 6. But the surveillance video and booking photograph show obvious differences. The booking photograph shows Mr. King with a full head of hair in the style of an afro, *see* King Booking

---

[1] To avoid confusion, pages cited here are those printed on the top right page of the document by the CM/ECF system.

[2] California Law Enforcement Telecommunications System.

Photograph, Patterson Decl. Ex. B, ECF No. 21-3, whereas the surveillance video shows a man with very short hair and a developing bald spot at his hairline, *see* Boler Report at 5; Surveillance Video Still Frame, Patterson Decl. Ex. A, ECF No. 21-3.  Officer Boler noted this bald spot in his report after he viewed the surveillance video.  *See* Boler Report at 5.

Officer Boler also relied on Mr. King's physical description.  *Id.* at 6.  Officer Boler had described the yellow-hoodied suspect as approximately 6', observing he was taller than the other suspect in the surveillance video, 5'10" Keyauntay Head.  *See id.* at 5.  Officer Boler further noted the yellow-hoodied suspect had a medium build, *see id.*, and a witness described him as "stocky," *see* Davis Witness Statement, Patterson Decl. Ex. H, ECF No. 21-3.  Mr. King, on the other hand, is 5'9" and 150 pounds.  *See* King CLETS Response.  When he was later arrested, he was described as "SMALL/THIN/PETITE."  *See* King Arrest Info. at 13, Patterson Decl. Ex. C, ECF No. 21-3.

The day after the robbery, on May 8, 2019, Sacramento Police stopped the Cadillac CTS for an unrelated traffic violation.  *See* Boler Report at 6.  Keyauntay Head was driving and told officers that he owned the car.  *See* Statement of Prob. Cause at 6, Houston Decl. Ex. A, ECF No. 19-4.

On May 9, 2019, Officer Boler asked the three Costco employees who witnessed the robbery to identify the suspects.  *See* Houston Suppl. at 27, Patterson Decl. Ex. F, ECF No. 21-3.  The first employee said he could not.  *See id.*  The second reviewed Officer Boler's photo lineup and could not identify Mr. Head or Mr. King.  *See id.*  Officer Boler then presented the photo lineup to the third Costco employee, Eric Klockenbrink.  *See id.*  Mr. Klockenbrink identified Mr. King as the perpetrator wearing the yellow hoodie.  *See id.*  He did not identify a second suspect.  *See id.*; *see also* Statement of Prob. Cause at 6.  Officer Boler's body camera was off when he conducted the photo lineups.  *See* Boler Report at 7; *contra* Sacramento Police Department General Order 525.07(E)(3) (Jan. 2019)[3] (Sacramento PD police officers "shall

---

[3] The court takes judicial notice of this publicly available government document.  *See Kater v. Churchill Downs Inc.*, 886 F.3d 784, 788 n.3 (9th Cir. 2018) (taking judicial notice of government documents on government website).

3

activate their [body-worn cameras] during investigations and enforcement activity, including evidence collection, whether self-initiated or in response to a dispatched call."). On May 30, 2019, Officer Houston submitted an arrest warrant request form to the Sacramento Superior Court for the arrest of Keyauntay Head and Mr. King. *See* Warrant Appl., Patterson Decl. Ex. L, ECF No. 21-3. As part of this request, Officer Houston submitted a Statement of Probable Cause and Officer Boler's May 9 Observations Report. *Id.* In Officer Houston's probable cause statement, only the following statements are relevant to Mr. King:

> The [Cadillac CTS] was registered to [ ] 23rd Ave. . . . . (King) shows to have that as an address of record and is on two grants of misdemeanor probation there. As of 7-8-18, this is also his address on file with DMV. Officers noted that upon viewing official photographs of [King], and the video surveillance video, they appear to be the same person.
>
> Officers conducted a traffic stop on the vehicle on 5-8-19 at 0149 hours and contacted the driver who was identified as [Head]. [Head] advised the officers that the vehicle was in fact his for approximately one week. . . .
>
> "VIC #3" advised he did not get a good look at "SUS #1" (Head) and "SUS #2" (King), and therefore could not ID.
>
> "VIC #2" was shown photographic line-ups of "SUS #1 (Head) and "SUS #2" (King) but was unable to identify the suspects in this theft.
>
> "VIC #1" was unable to identify "SUS #1" (Head). However, "VIC #1" positively identified "SUS #2" (King).

Statement of Prob. Cause. Officer Houston did not attach photos of the suspects to the warrant application.

The warrant issued the same day it was requested, and Sacramento police arrested Mr. King on June 20, 2019. *See* Felony Arrest Warrant, Houston Decl. Ex. B, ECF No. 19-4; King Decl. ¶ 1; Houston Decl. ¶ 18. He spent several weeks in Sacramento County Jail. *See* King Decl. ¶ 11. When Mr. King's attorney received the Costco surveillance video, he sent it to the deputy district attorney. *See id.* ¶ 12. The deputy district attorney immediately dismissed the criminal complaint against Mr. King. *See id.*

/////

Mr. King filed suit, alleging six claims. *See generally* First Am. Compl., ECF No. 5. Specifically, Mr. King brings two claims under 42 U.S.C. § 1983: a *Monell* claim against the City of Sacramento and a Fourth Amendment unlawful seizure claim against Officers Boler and Houston. *Id.* Mr. King also asserts state law claims for negligence, false arrest, intentional infliction of emotional distress, and malicious prosecution against Officers Boler and Houston, among other defendants.[4] *Id.* Defendants City of Sacramento and Officers Boler and Houston move for summary judgment on all claims except malicious prosecution. *See generally* Mot., ECF No. 19. The court received full briefing and heard oral arguments by videoconference at a hearing on January 21, 2022. *See* Opp'n, ECF No. 21; Reply, ECF No. 23; Minutes, ECF No. 26. Kellan Patterson appeared for plaintiff; Sean Richmond appeared for defendants.

## II.  LEGAL STANDARD

A court may grant summary judgment only "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The "threshold inquiry" is whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The burden then shifts to the nonmoving party, which "must establish that there is a genuine issue of material fact . . . ." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 585 (1986). In carrying their burdens, both parties must cite to "particular parts of materials in the record . . . or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1); *see also Matsushita*, 475 U.S. at 586 (nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material

---

[4] This court dismissed Mr. King's negligence and intentional infliction of emotional distress claims against defendants Costco and Mr. Klockenbrink on January 3, 2022. *See* Mot. Dismiss Order, ECF No. 20. The court did not dismiss Mr. King's malicious prosecution claim against these defendants. *See id.* at 7–10.

facts"). Moreover, "the requirement is that there be no *genuine* issue of *material* fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248 (emphasis in original).

In deciding a motion for summary judgment, the court draws all inferences and views all evidence in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587 (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The Supreme Court has taken care to note that district courts should act "with caution in granting summary judgment," and have authority to "deny summary judgment in a case where there is reason to believe the better course would be to proceed to a full trial." *Anderson*, 477 U.S. at 255. A trial may be necessary "if the judge has doubt as to the wisdom of terminating the case before trial." *Gen. Signal Corp. v. MCI Telecommunications Corp.*, 66 F.3d 1500, 1507 (9th Cir. 1995) (quoting *Black v. J.I. Case Co.*, 22 F.3d 568, 572 (5th Cir. 1994)). This may be the case "even in the absence of a factual dispute." *Rheumatology Diagnostics Lab., Inc v. Aetna, Inc.*, No. 12-05847, 2015 WL 3826713, at *4 (N.D. Cal. June 19, 2015) (quoting *Black*, 22 F.3d at 572); *accord Lind v. United Parcel Serv., Inc.*, 254 F.3d 1281, 1285 (11th Cir. 2001).

### III. ANALYSIS

#### A. Judicial Deception

Mr. King claims first that Officers Boler and Houston violated his Fourth Amendment right to be free from unreasonable seizures. *See* First Am. Compl. ¶¶ 33–38. He claims his arrest was unconstitutional because, while the warrant request might support a finding of probable cause within its four corners, important information was knowingly or recklessly omitted or misrepresented, which misled the approving magistrate judge. In other words, Mr. King's theory of liability is a "judicial deception" claim. Defendants argue they are entitled to qualified immunity and therefore summary judgment. *See* Mot. at 13–16.

"In *Hervey v. Estes*, 65 F.3d 784 (9th Cir. 1995), [the Ninth Circuit] clarified the mechanics of a judicial deception claim and carefully spelled out the burden a plaintiff must meet

in order to survive a defendant officer's motion for summary judgment on the ground of qualified immunity." *Liston v. County Riverside*, 120 F.3d 965, 973 (9th Cir. 1997). Specifically, the plaintiff must (1) "make a 'substantial showing' of deliberate falsehood or reckless disregard for the truth," and (2) "establish that, but for the dishonesty, the challenged action would not have occurred." *Id.* Thus, in judicial deception cases in the Ninth Circuit, there is no independent requirement that plaintiff show a defendant violated clearly established law: the "qualified immunity analysis at the summary judgment stage is swallowed by the question of reckless or intentional disregard for the truth." *Chism v. Washington State*, 661 F.3d 380, 393 n.15 (9th Cir. 2011) (citation omitted); *see also Butler v. Elle*, 281 F.3d 1014, 1024 (9th Cir. 2002) (noting Ninth Circuit "effectively intertwine[s] the qualified immunity question (1) whether a reasonable officer should have known that he acted in violation of a plaintiff's constitutional rights with (2) the substantive recklessness or dishonesty question").

The Ninth Circuit explained this approach in *Chism*:

> [T]his "merger" is sensible because "no reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in seeking a warrant. Accordingly, should a factfinder find against an official on [the] state-of-mind question, qualified immunity would not be available as a defense."

661 F.3d at 393 n.15 (citation omitted); *accord Hervey*, 65 F.3d at 788 ("[I]f an officer 'submitted an affidavit that contained statements he knew to be false or would have known were false had he not recklessly disregarded the truth[,] . . . he cannot be said to have acted in an objectively reasonable manner,' and the shield of qualified immunity is lost."). The Ninth Circuit recently reaffirmed this approach. *See Benavidez v. County of San Diego*, 993 F.3d 1134, 1152 (9th Cir. 2021) ("[J]udicial deception alone is sufficient to overcome . . . qualified immunity."). Thus, if a plaintiff satisfies the two judicial deception requirements, "the matter must go to trial." *Bravo v. City of Santa Maria*, 665 F.3d 1076, 1083 (9th Cir. 2011) (citation omitted).

/////

### 1. Reckless omissions

As to the first prong, summary judgment is improper where "there is a genuine dispute as to the facts and circumstances within an officer's knowledge or what the officer and claimant did or failed to do." *Hopkins v. Bonvicino*, 573 F.3d 752, 763 (9th Cir. 2009) (internal quotation marks and citation omitted); *see also Butler*, 281 F.3d at 1024 ("[S]tate of mind is for the jury." (citation omitted)). To identify a genuine dispute, Mr. King "need only make a substantial showing of a deliberate or reckless omission, not provide 'clear proof.'" *Bravo*, 665 F.3d at 1087 (quoting *Liston*, 120 F.3d at 974). Alleged judicial deception may take the form of omissions or false statements. *United States v. Stanert*, 762 F.2d 775, 780 (9th Cir. 1985).

Mr. King has made the required substantial showing, for purposes of summary judgment, that Officer Houston was at least reckless in omitting exculpatory information from the May 30, 2019 warrant application. First, in a case that largely turns on physical appearance, Officer Houston was in possession of identifying information that, at a minimum, cast serious doubt as to whether Mr. King was in fact the yellow-hoodied suspect. Specifically, Officer Houston had Mr. King's booking photograph and the surveillance video of the suspects. *See* Boler Report at 5–6. A quick glance at these images shows glaring differences between Mr. King and the yellow-hoodied suspect. As noted, Mr. King's booking photograph shows he has a full head of hair in the style of an afro, *see* King Booking Photograph, whereas the surveillance video shows the yellow-hoodied suspect with very short hair and a developing bald spot at his hairline, *see* Boler Report at 5. Officer Houston also knew Mr. King stands 5'9" tall and weighs 150 pounds. *See* King CLETS Response. Officer Boler himself had described the yellow-hoodied suspect as 6' and of "medium build," *see* Boler Report at 5, and a witness described him as "stocky" and "taller" than Keyauntay Head, who was 5'10", *see* Davis Witness Statement.

Second, Mr. King's connection to the Cadillac CTS was tenuous at best. Officer Houston's Statement of Probable Cause suggests this was an open-and-shut case: The officers searched the license plate, which led them to Mr. King's specific address, which led them to Mr. King's booking photograph, which "appear[ed] to be" of the yellow-hoodied suspect. Statement of Prob. Cause at 6. But Officer Houston did not include several relevant details that

1   cast doubt on Mr. King's connection to the vehicle.  Specifically, Michael Brown—not
2   Mr. King—was the last-known registered owner of the Cadillac CTS at the 23rd Avenue address.
3   *See* Cadillac CLETS Response.  In addition, the 23rd Avenue address is an eight-unit apartment
4   building, not a single family home.  *See* King Decl. ¶ 13.  The wording of Officer Boler's
5   Observations Report signals that unrelated persons might live at the address.  *See* Boler Report at
6   6 ("In a records check of the registered address to the vehicle, 4023 23rd Ave Sacramento, I was
7   able to locate (S) Travis King who *also* lived there." (emphasis added)).  Finally, Mr. Brown's
8   vehicle registration expired on March 12, 2018, 14 months before the Costco robbery and four
9   months before Mr. King was ever associated with the 23rd Avenue address.  *See id.*; King CLETS
10  Response.  Thus, while the officers all but state Mr. King had direct ties to the vehicle and thus
11  the Costco robbery, a reasonable fact finder reviewing the record could conclude the officers
12  either looked for or settled on any man in the apartment complex who bore some resemblance to
13  the yellow-hoodied suspect.

14        The officers had access to these exculpatory facts when they submitted the warrant
15  application.  With these facts, at the summary judgment stage, Mr. King is entitled to the
16  reasonable inference that they intentionally or recklessly failed to disclose them.  *See Bravo*,
17  665 F.3d at 1087 (reversing grant of summary judgment where officer "may have" viewed
18  relevant fact in preparing warrant affidavit because plaintiffs were "entitled to the reasonable
19  inference" that detective had in fact seen and deliberately or recklessly failed to disclose it).

20        In sum, Mr. King has made the required "substantial showing of a deliberate or reckless
21  omission."  *Id.*  Given the importance of physical appearance and Mr. King's ties to the Cadillac
22  CTS and relevant address to the finding of probable cause, a reasonable jury could conclude that
23  the officers' failure to mention any of the exculpatory evidence amounted to reckless disregard
24  for the truth.  If the omissions are material, it is for a jury to decide whether the officers omitted
25  this information with intentional or reckless disregard for its bearing on probable cause.  *See*
26  *Butler*, 281 F.3d at 1024.  The court turns to materiality next.
27  /////

**2. Materiality**

The second element—whether the information omitted from the warrant application is material—is a question of law. *Id.* ("Materiality is for the court . . . ." (citing *Hervey*, 65 F.3d at 789)). In making this determination, the court considers "whether the affidavit, once corrected and supplemented, establishes probable cause." *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009). The materiality element "requires the plaintiff to demonstrate that the magistrate would not have issued the warrant with false information redacted, or omitted information restored." *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011). In other words, "the plaintiff must establish that the remaining information in the affidavit is insufficient to establish probable cause." *Hervey*, 65 F.3d at 789.

To assess materiality, the court must add the missing information to, and subtract misrepresentations from, the warrant application and determine if "what remains [is] sufficient to justify the issuance of the warrant." *Baldwin v. Placer County,* 418 F.3d 966, 970 (9th Cir. 2005); *United States v. DeLeon,* 979 F.2d 761, 764 (9th Cir. 1992) ("Where . . . a warrant's validity is challenged for deliberate or reckless omissions of facts that tend to mislead, the affidavit must be considered with the omitted information included."). In conducting this exercise, the court considers a corrected and supplemented affidavit below. The court's deletions are redlined; additions are bolded.

> The [Cadillac CTS] was **last** registered **fourteen months ago on 3-12-18** to **Michael Brown at** 4023 23rd Ave., Sacramento, Ca. **This address is an eight-unit apartment building.** "SUS #2" (King) shows to have **this eight-unit building** ~~that~~ as an address of record and is on two grants of misdemeanor probation there. As of 7-8-18, this is also his address on file with DMV. **CLETS Records identify King as 5'9["], 150 pounds. His booking photograph shows that he has a full head of hair and dark complexion.**
>
> **The man captured by Costco surveillance video is tall and muscular; he has short hair and appears to be balding at his hairline. A still frame from the Costco surveillance video shows the person suspected of being King on the left.**

/////

/////

10

        Officers noted that upon viewing official photographs of "SUS #2" (King), and the video surveillance video, they **thought they were** ~~appear to be~~ the same person.

        Officers conducted a traffic stop on the vehicle on 5-8-19 at 0149 hours and contacted the driver who was identified as "SUS #1" (Head). . . . [Head] advised the officers that the vehicle was in fact his for approximately one week. . . .

        "VIC #3" advised he did not get a good look at "SUS #1" (Head) and "SUS #2" (King), and therefore could not ID.

        "VIC #2" was shown photographic line-ups of "SUS #1" (Head) and "SUS #2" (King) but was unable to identify the suspects in this theft.

        "VIC #1" was unable to identify "SUS #1" (Head). However, "VIC #1" positively identified "SUS #2" (King).

        **The officer's body camera was off while conducting the photo lineups.**

The question, then, is whether the foregoing revised description establishes probable cause. "[P]robable cause exists where under the totality of the circumstances known to the officer, a prudent person would have concluded that there was a fair probability that the suspect had committed or was committing a crime." *United States v. Noster*, 590 F.3d 624, 629–30 (9th Cir. 2009). The standard is inherently "incapable of precise definition or quantification into percentages because it deals with probabilities and depends on the totality of the circumstances." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003). Nevertheless, "the substance of all the definitions of probable cause is a reasonable ground for belief of guilt, and that the belief of guilt must be particularized with respect to the person to be searched or seized." *Id.* (citations and quotation marks omitted).

    The totality of the circumstances here does not establish probable cause. Officer Houston relied on three things to support probable cause to arrest Mr. King; all three are undercut by the supplemented affidavit. First, Officer Houston suggests the Cadillac CTS was registered to Mr. King's address. However, once the affidavit is properly supplemented, the address shared by Mr. King and the Cadillac CTS contributes little if anything to a finding of probable cause. The supplemented affidavit shows only that the Cadillac CTS had been registered 14 months prior,

1    and before Mr. King was known to live in the eight-unit building, to a different person in the
2    building.  This information does little to create "a reasonable ground for belief of guilt." *Id.*

3      Officer Houston also relied on two identifications.  First, based on the surveillance video
4    and Mr. King's booking photograph and physical description, Officer Boler stated Mr. King
5    "appear[ed] to be" the yellow-hoodied suspect.  Properly supplemented, the affidavit would
6    attach the materials on which Officer Boler relied.  The court has carefully reviewed the booking
7    photograph and a still photo of the person suspected of being Mr. King, shopping at Costco.
8    After reviewing these images and descriptors, a "prudent person" would not conclude "there was
9    a fair probability" that Mr. King was the yellow-hoodied suspect.  *Noster,* 590 F.3d at 629–30.
10   The original affidavit's omission of the booking photograph, the still frame, and the physical
11   description is particularly consequential "[g]iven the reliance that . . . federal . . . courts place on
12   an experienced officer's perceptions of sight." *Hervey*, 65 F.3d at 791.  "[T]he deliberately false
13   or reckless inclusion of those perceptions is unforgivable. . . .  Courts must be exceptionally
14   vigilant when officers fabricate these perceptions." *Id.*; *see also Stanert,* 762 F.2d at 781 (by
15   "reporting less than the total story, an affiant can manipulate the inferences a magistrate will
16   draw"; to allow a magistrate "to be misled in such a manner could denude the probable cause
17   requirement of all real meaning.").

18     Finally, though the identification was not recorded because Officer Boler's body camera
19   was off, Mr. Klockenbrink identified Mr. King in a photo lineup.  While "such witnesses are
20   generally presumed reliable," *Ewing v. City of Stockton*, 588 F.3d 1218, 1224 (9th Cir. 2009),
21   here a comparison of Mr. King's booking photograph and the surveillance still frame raise
22   questions about the eyewitness identification.  Neither this court nor reviewing magistrate judges
23   should be expected to defer to witnesses when officers have and withhold reliable photographic
24   evidence that casts clear doubt on probable cause.

25     The totality of the circumstances reflected in the corrected affidavit does not establish
26   probable cause, and the omissions are material. *See Ewing*, 588 F.3d at 1226 (omissions are
27   material when they "cast doubt on the existence of probable cause"); *see also Perkins*, 850 F.3d at
28   1117–18 (noting affiant "selectively included information bolstering probable cause, while

omitting information that did not" and concluding this "usurped the magistrate's duty to conduct an independent evaluation of probable cause").  Simply put, the officers gave the reviewing magistrate improperly inflated indicia of probable cause.  Officer Houston's Statement of Probable Cause suggests the officers searched the license plate, which led them in a straight line to Mr. King's address, and Mr. King's booking photograph "appeared to be" the man wearing the yellow hoodie in the surveillance video.  But if the officers had provided even a general summary of other relevant evidence, a neutral magistrate would not have issued the warrant without, at a minimum, requiring additional information.  *See Liston*, 120 F.3d at 974 ("[T]he appropriate inquiry is not whether [an omitted fact] dispositively established [a lack of probable cause], but rather whether that fact would have prompted the issuing judge to require additional information . . . ." (internal quotation marks and alterations omitted)).  Mr. King has therefore sufficiently established a genuine issue of material fact on his claim that the warrant was obtained through judicial deception in violation of his Fourth Amendment rights.  Accordingly, defendants' motion for summary judgment is denied as to Mr. King's judicial deception claim.  *See Butler*, 281 F.3d at 1024 (because "no reasonable officer could believe that it is constitutional to act dishonestly or recklessly with regard to the basis for probable cause in seeking a warrant," the claim either stands or falls on whether there is sufficient evidence to raise a jury question with respect to the officer's state of mind.); *see also Chism*, 661 F.3d at 393.

### B. State Law Claims

Mr. King also asserts several state law claims, namely false arrest, negligence and intentional infliction of emotional distress (IIED).  *See generally* First Am. Compl.  Defendants' arguments for summary judgment on these claims are derivative of their argument with respect to Mr. King's Fourth Amendment claim.  *See* Mot. at 17–18 (arguing defendants are entitled to summary judgment on false arrest claim because there was probable cause); *id.* at 18 (same for negligence claim); *id.* at 18–19 (arguing defendants are entitled to summary judgment on IIED claim because the officers' conduct could not have been extreme and outrageous, as required for IIED, because there was probable cause).  As explained above, there are genuine factual disputes

/////

1  bearing directly on whether there was probable cause supporting Mr. King's arrest.  The court
2  therefore denies defendants' motion for summary judgment on Mr. King's state law claims.

3       **C.**    *Monell* **Claim**

4       To prevail on his *Monell* claim against the City of Sacramento, Mr. King must prove:
5  (1) he was deprived of a constitutional right; "(2) the municipality had a policy; (3) the policy
6  amounts to deliberate indifference to his constitutional right; and (4) 'the policy is the moving
7  force behind the constitutional violation.'"  *Gordon v. Cty. of Orange*, 6 F.4th 961, 973 (9th Cir.
8  2021) (quoting *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011)).  The second
9  element may be satisfied by establishing a custom or practice, so long as the custom is so
10 "persistent and widespread" that it constitutes a "permanent and well settled city policy."  *Monell*
11 *v. Dept. of Soc. Serv. of N.Y.*, 436 U.S. 658, 691 (1978).  Generally, "[l]iability for improper
12 custom may not be predicated on isolated or sporadic incidents; it must be founded upon practices
13 of sufficient duration, frequency and consistency that the conduct has become a traditional
14 method of carrying out policy."  *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996).  A plaintiff
15 opposing summary judgment in the absence of an express municipal policy must "produce
16 evidence creating a triable issue of fact regarding the existence of an unconstitutional practice or
17 custom."  *See Gordon*, 6 F.4th at 974.

18      On the record before the court, Mr. King has not pointed to a genuine issue of material
19 fact regarding the existence of a municipal custom or practice.  Rather, he points only to two
20 incidents, one of which is his own experience, as evidence of the Sacramento Police
21 Department's failure to train its officers.  *See* Opp'n at 12–13.  But two unconstitutional
22 incidents—without more—does not prove a policy, custom, or practice exists.  *See Meehan v.*
23 *Cty. of Los Angeles*, 856 F.2d 102, 107 (9th Cir. 1988) (holding that two "unconstitutional
24 assaults" by the Sheriff's Special Enforcement Bureau does not evidence a policy for purposes of
25 *Monell* liability); *see also Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("A municipality's
26 culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to
27 train." (citation omitted)).  Because there is no genuine issue of material fact regarding the
28 /////

existence of a municipal policy, defendants are entitled to summary judgment on Mr. King's *Monell* claim.

IV.     **CONCLUSION**

The court **grants** summary judgment with respect to Mr. King's *Monell* claim, and otherwise **denies** the defense motion.

A final pretrial conference is set for **November 4, 2022** at **10 a.m.** The parties shall meet and confer and file a joint pretrial statement **no later than three weeks prior** to the final pretrial conference.

The provisions of Local Rule 281 shall apply with respect to the matters to be included in the joint pretrial statement. At least one of the attorneys who will conduct the trial for each of the parties shall attend the final pretrial conference. All motions *in limine* must be filed in conjunction with the joint pretrial statement. In most cases, motions *in limine* are addressed and resolved on the morning of the first day of trial. The parties may alert the court at the final pretrial conference and in their final joint pretrial statement that a particular motion or motions should be resolved earlier. At the final pretrial conference, the court will set a briefing and hearing schedule on the motions *in limine* as necessary. The parties are reminded that a motion *in limine* is a pretrial procedural device designed to address the admissibility of evidence. The court looks with disfavor upon dispositional motions presented at the final pretrial conference or at trial in the guise of motions *in limine*.

This order resolves ECF No. 19.

IT IS SO ORDERED.

DATED:  September 26, 2022.

CHIEF UNITED STATES DISTRICT JUDGE